# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ONEBEACON AMERICA INSURANCE
COMPANY,

   Plaintiff/Counter-Defendant,

  v.

URBAN OUTFITTERS, INC., and
ANTHROPOLOGIE, INC.

   Defendants/Counter-Plaintiffs/
   Third Party-Plaintiffs,

  v.

THE HANOVER INSURANCE GROUP,

   Third Party-Defendant.

Case Number 2:13-cv-05269-SD

Judge Stewart R. Dalzell

## URBAN OUTFITTERS, INC. AND ANTHROPOLOGIE, INC.'S BRIEF IN RESPONSE TO HANOVER'S MOTION FOR SUMMARY JUDGMENT

   Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Urban Outfitters, Inc. and

Anthropologie, Inc. ("Anthropologie") (collectively "Urban Outfitters"),[1] by and through their

undersigned counsel, respectfully submit this Brief in Response ("Response") to Hanover's

Motion for Summary Judgment ("Hanover's Motion").

## I.  INTRODUCTION

   Hanover has a duty to defend Urban Outfitters in each of the underlying ZIP Code

Actions.  The incontrovertible facts and law set forth below and in further detail in Urban

Outfitters' Brief in Support of its Motion for Summary Judgment, (Dkt. No. 35 ("Urban

Outfitters' Motion")),  which this Response incorporates, demonstrate that as a matter of law:

---

[1]  For ease of reference, Urban Outfitters will utilize the same definitions as were used in Urban Outfitters' Brief in Support of its Motion for Summary Judgment, unless a word or phrase is otherwise defined herein.

(a) the ZIP Code Actions allege "oral or written publication, in any manner, of material that violates a person's right of privacy," triggering Hanover's duty to defend under the "personal and advertising injury" provisions of the Hanover Policies[2]; (b) each of the ZIP Code Complaints requests damages that are covered under the Hanover Policies; and (c) none of the Hanover Policies' exclusions apply to the ZIP Code Actions.

Hanover's Motion does not alter this inevitable conclusion.  First, Hanover erroneously alleges that none of the ZIP Code Complaints alleges a violation of the right of privacy, despite acknowledging, at the same time, that Hanover's duty to defend is determined solely by looking to the allegations in the underlying complaint.  As a matter of law, the ZIP Code Complaints allege a violation of the right to secrecy, the relevant right of privacy in determining an insurer's duty to defend under Pennsylvania law.  Next, Hanover argues that the ZIP Code Complaints do not allege publication because they do not allege "widespread dissemination."  This argument also fails, as Pennsylvania law does not require "widespread dissemination" to constitute publication under the advertising provision of a CGL policy.  Indeed, Pennsylvania law does not even require publication to be to a third party.  Hanover also alleges that none of the ZIP Code Complaints seek the type of damages covered under Hanover's Policies.   However, Pennsylvania courts have consistently found coverage in cases seeking the very same type of damages sought in the ZIP Code Complaints.

Hanover lastly relies on two exclusions in an attempt to avoid its obligations of defending Urban Outfitters in the ZIP Code Actions.  These arguments are unavailing.  First, the Distribution of Material exclusion does not apply because the ZIP Code Complaints each contain

---

[2]     The term "Hanover Policies" refers to the "2010-2011 Policy," the "2011-2012 Policy," and the "2012-2013 Policy," as those terms are defined in Urban Outfitters' Motion.  (*See* Urban Outfitters' Motion at 2-3.)

other common law allegations that are not precluded under this exclusion.  Second, the Prior

Publication exclusion also does not apply to bar coverage because each ZIP code Urban

Outfitters allegedly published constitutes new material and, thus, a new publication.

For the reasons set forth below, and those set forth in Urban Outfitters' Motion,

Hanover's Motion should be denied and Urban Outfitters' Motion should be granted.

## II.    ARGUMENT

### A.    The ZIP Code Complaints All Allege "Publication, In Any Manner"

Hanover asserts that the ZIP Code Complaints do not allege publication, but this

argument fails as a matter of law.  In particular, Hanover erroneously asserts that "publication"

should be interpreted in this case to mean "to make generally known, to make public

announcement, . . . to disseminate to the public . . . or to produce or release for distribution."

(Hanover's MSJ at 11.)  However, this is not the standard applicable to the case at hand for at

least four reasons: (1) while the phrase "making known to" might require disclosure to a third

party, the term "publication" does not; (2) the Hanover Policies do not cover only "publication,"

but, instead contain much more expansive language covering "publication, *in any manner*"[3]; (3)

the cases Hanover relies on to argue that the ZIP Code Complaints do not allege a "publication"

are distinguishable because they involve the publicity requirement of invasion of privacy tort;

and (4) dictionary definitions of "publication" should not be applied, as there is a clear definition

rooted in the law of the Eastern District of Pennsylvania.

---

[3]     Each of the Hanover umbrella policies contains "drop down" provisions that provide coverage when the primary policy does not provide a duty to defend.  (Jt. App. at JA0207 (2010-2011 Policy, umbrella coverage form) ("Our duty to defend applies only to 'suits' *not covered by any 'Underlying Insurance'*") (emphasis added); (*see also id.* at JA0309 (2011-2012 Umbrella Policy); *id.* at JA0335 (2012-2013 Umbrella Policy) ("[w]e will have the right and duty to defend the insured against any 'suit' seeking damages . . . *when the 'underlying insurance' does not provide coverage*.") (emphasis added).)  Therefore, to the extent the Hanover Policies' umbrella coverage is broader than the underlying CGL primary coverage, this Response relates to the umbrella coverage, because it will drop down in place of the primary coverage. *See, e.g., Resnick v. Chubb Corp.*, 74 Fed. App'x. 216, 221 (3d Cir. 2003).

First, the court in *Melrose Hotel*, a case cited by Hanover, held that while the phrase "making known to . . . implies a disclosure to a third party," the term "'publication' . . . can include the simple act of issuing or proclaiming" under Pennsylvania law. *See Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 503 (E.D. Pa. 2006); (*see also* Hanover MSJ at 13, 19.)  Likewise, the Third Circuit Court of Appeals has upheld the distinction between these two phrases.  *See St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, 319 Fed. Appx. 121, 125 (3d Cir. 2009).  Courts have found "publication" in at  least four ways: sending information to third parties; the internal transmittal of the information; the sending of personal information of an underlying plaintiff back to that complainant; and the initial recording of the information. (*See* Urban Outfitters' Motion at 16-20.)

Second, the relevant insurance provision in Hanover's Policies is "publication, in any manner," as opposed to simply "publication." (*See, e.g.*, Jt. App. at JA0250 (2011-2012 Primary Policy).)  The "in any manner" language has been interpreted to mean that "publication" should be given a considerably more expansive definition.  *See, e.g., Am. Family Mut. Ins. Co. v. C.M.A. Mortg., Inc.*, No. 06-cv-1044-SEB-JMS, 2008 U.S. Dist. LEXIS 30233, *16 (S.D. Ind. Mar. 31, 2008) (emphasis added) (holding that the insurer had a duty to defend, reasoning that "[t]he phrase '*in any manner*' leaves no room for equivocation" when a reasonable person would expect coverage under the insurance policy); IRMI, Comm. Liab. Ins., Vol. I, Chap. V, Comm. Liab. Annotated CGL Policy, January 2003, page V.L.35 ("in any manner" "emphasize[s] the wide range of media in which offensive materials may be 'published'").

Third, instead of addressing *Melrose Hotel*, which is directly on point, Hanover confuses the "publication" requirement of "publication that violates a person's right of privacy" with the type of "publication" or "publicity" that is required for coverage of an invasion of privacy tort.

(*See* Hanover MSJ at 11, 20) (citing *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 687 (W.D. Pa. 2008)).)  However, the type of "publicity" necessary to prove a privacy tort is not required to prove a "publication that violates a person's right of privacy" as the term is used in an insurance policy.  *See, e.g., Melrose Hotel*, 432 F. Supp. 2d at 503.  Other Pennsylvania courts recognize that "publicity" or "publication" has different legal meanings depending on its context.  *See, e.g., Harris v. Easton Pub., Co.*, 335 Pa. Super. 141, 155 (Pa. Super. Ct. 1984) ("[T]here is a legal distinction between 'publication' as that term is used in connection with liability for defamation, and 'publicity' as it is used in a § 652D action for invasion of privacy.")  The Eastern District of Pennsylvania has not applied the more restrictive tort standard in interpreting the relevant insurance provision.  *See, e.g., Melrose Hotel*, 432 F. Supp. 2d at 503.

Finally, dictionary definitions of "publication" should not be applied because courts should only resort to dictionary definitions "[i]n the absence of a clear definition rooted in law." *Colony Nat'l Ins. Co. v. Hing Wah Chinese Rest.*, 546 F. Supp. 2d 202, 208 (E.D. Pa. 2008) (citation omitted).  Pennsylvania law has a clear meaning of "publication" in terms of how widespread dissemination is required to be to constitute publication, and it has held that "publication" does not need to be to a third party.  *See, e.g., Melrose Hotel*, 432 F. Supp. 2d at 503.  Thus, the dictionary definitions of "publication" expressed in *Whole Enchilada* should not be applied to the case at hand.  *See Whole Enchilada, Inc.*, 581 F. Supp. 2d at 697.  With the foregoing in mind, each of the ZIP Code Actions alleges a publication as a matter of law, as set forth below.

### 1.    The *Hancock* Complaint Alleges Publication

The *Hancock* Complaint alleges at least four different types of publication.   First, the *Hancock* Complaint alleges publication because it states that Urban Outfitters "asked" customers for their ZIP codes, then "entered" them "into Urban Outfitters, Inc.'s point-of-sale register." (*See* Jt. App. at JA008-9 (Hancock Compl. at ¶¶ 26, 28).)  The recording of information to a machine constitutes publication.  *See Encore Receivable Mgmt. v. Ace Prop. & Cas. Ins. Co.*, No. 12-cv-297, 2013 U.S. Dist. LEXIS 93513, *31 (S.D. Ohio July 3, 2013).

Second, the *Hancock* Complaint alleges that Urban Outfitters uses "point-of-sale register systems" that provide "instant back office access to register information," and that Urban Outfitters engages in "illegal storage" of the information.  (*See* Jt. App. at JA008, JA0013 (Hancock Compl. at ¶¶ 21, 53.)  These statements allege publication, as internal transmission of information constitutes publication.  *See Encore*, 2013 U.S. Dist. LEXIS 93513, at *31, n. 17; *Tamm v. Hartford Fire Ins. Co.*, No. 02-0541-BLS2, 2003 Mass. Super. LEXIS 214, *11 (Mass. Super. Ct. July 10, 2003).

Third, the *Hancock* Complaint alleges that Urban Outfitters engages "in direct marketing campaigns without customers' permission," which establishes publication, as transmission of a person's private information back to that particular person constitutes publication.  (*See* Jt. App. at JA004 (Hancock Compl. at ¶ 2)); *see also Pietras v. Sentry Ins. Co.*, 06-C-3576, 2007 U.S. Dist. LEXIS 16015, *9-11 (N.D. Ill. Mar. 6, 2007); *Zurich Am. Ins. Co. v. Fieldstone Mortg.*, CCB-06-2055, 2007 U.S. Dist. LEXIS 81570 (D. Md. Oct. 26, 2007).

Finally, the *Hancock* Complaint alleges: "[d]efendants . . . exposed [the customers] to potential identity fraud," imputing that the information was sent or otherwise accessible to third parties. (*See* Jt. App. at JA0011 (Hancock Compl. at ¶ 44(d)(vi))).  The Eastern District of

Pennsylvania has recognized that sending information to third parties constitutes publication. *See, e.g., See Hanover Ins. Co. v. Urban Outfitters*, No. 12 C 3961, 2013 U.S. Dist. LEXIS 116889, *15-16 (E.D. Pa. Aug. 19, 2013); *Melrose Hotel*, 432 F. Supp. 2d at 503.

Each of the foregoing methods of publication is sufficient on its own to constitute publication. Thus, there can be no question that the *Hancock* Complaint alleges a publication, as a matter of law.

### 2.    The *Miller* Complaint Alleges Publication

The *Miller* Complaint also alleges "publication" as a matter of law. Notably, OneBeacon does not dispute that the *Miller* Complaint alleges publication, yet Hanover continues to attempt to evade its duty to defend on the most tenuous of grounds. (*See* OneBeacon MSJ.)

First, the *Miller* Complaint alleges publication with its statements that "Urban Outfitters has the ability to sell the ZIP code information it collects . . . to third parties for a profit." (*See* Jt. App. at 0022 (Miller Compl. at ¶ 17).) As seen above, communicating information to third parties constitutes publication. *See, e.g., Urban Outfitters*, 2013 U.S. Dist. LEXIS 116889 at *15-16; *Melrose Hotel*, 432 F. Supp. 2d at 503.

Second, the *Miller* Complaint alleges that "Urban Outfitters uses the ZIP code information it collects from customers. . . to send unsolicited marketing and promotional materials." (*See* Jt. App. at 0022 (Miller Compl. at ¶ 16).) Essentially, the Complaint asserts that Urban Outfitters employees, other than the clerks who initially collected the ZIP codes, had access to the ZIP code information in order to effectuate marketing and promotional distribution. To reiterate, internal dissemination constitutes publication. *See, e.g., Encore*, 2013 U.S. Dist. LEXIS 93513, at *31, n. 7; *Tamm*, 2003 Mass. Super. LEXIS 214, at *11.

Additionally, the *Miller* Complaint alleges that Urban Outfitters used customers' personal information "for its own marketing and promotional purposes, including to send unsolicited marketing and promotional materials, or 'junk mail.'" (*See* Jt. App. at 0018-19 (Miller Compl. at ¶ 1).)  By alleging that Urban Outfitters circulated the ZIP codes back to the *Miller* plaintiffs in the form of advertisements, such as direct mailings, the *Miller* plaintiffs allege publication.  *See, e.g., Pietras*, 2007 U.S. Dist. LEXIS 16015, at *9-11; *Fieldstone*, 2007 U.S. Dist. LEXIS 81570, *2, 17-18.

Finally, the *Miller* Complaint alleges publication in stating: Urban Outfitters engaged in "collecting ZIP codes at checkout. . . [and] recording that information as part of the [c]redit [c]ard transaction." (*See* Jt. App. at 0018 (Miller Compl. at ¶ 1).)   Communication of information to a database constitutes publication as a matter of law. *See, e.g., Encore*, 2013 U.S. Dist. LEXIS 93513 at *30.

### 3.    The *Dremak* Complaint Alleges Publication

The *Dremak* Complaint also alleges publication in at least four separate ways.  First, the *Dremak* Complaint alleges that Urban Outfitters engaged in "sharing [customers'] personal identification with the vendors" and did not tell customers that their personal information "would be sold or otherwise disseminated to third parties." (*See* Jt. App. at JA0040, (Dremak Compl. at ¶¶ 39-40).) As seen above, communicating information to third parties constitutes publication. *See, e.g., Urban Outfitters*, 2013 U.S. Dist. LEXIS 116889 at *15-16; *Melrose Hotel*, 432 F. Supp. 2d at 503.

Second, the *Dremak* Complaint alleges that Urban Outfitters maintained and used a ZIP code database, which suggests that Urban Outfitters' employees, other than the clerks who initially collected the ZIP codes, had access to the ZIP code information. (*See, e.g.*, Jt. App. at

JA0036 (Dremak Compl. at ¶ 17) ("Defendants collect and categorize personal identification information, including names, addresses (including ZIP codes), phone numbers, email addresses, and purchase histories into electronic databases which they then mine[] and index[] for their own business purposes.").)  Internal dissemination constitutes publication.  *See Encore*, 2013 U.S. Dist. LEXIS 93513, at *31, n. 7; *Tamm*, 2003 Mass. Super. LEXIS 214, at *11.

Third, the *Dremak* Complaint further alleges that Urban Outfitters circulated the ZIP codes back to the *Dremak* plaintiffs in the form of advertisements, such as direct mailings, which constitutes publication.  *See Pietras v. Sentry Ins. Co.*, 2007 U.S. Dist. LEXIS 16015, at *9-11; *Fieldstone*, 2007 U.S. Dist. LEXIS 81570; (*see also* Jt. App. at JA0036 (*Dremak* Compl. at ¶ 17) (Urban Outfitters uses customers' personal information "for their own business purposes, *e.g.*, targeted marketing.").)

Finally, the *Dremak* Complaint alleges that Urban Outfitters "record[ed] [ZIP code] information in electronic database systems," and communication to the database constitutes publication.  *See Encore*, 2013 U.S. Dist. LEXIS 93513 at *30; (*see also* Jt. App. at JA0032 (*Dremak* Compl. at ¶ 2.).)

### B.    The ZIP Code Complaints Allege "A Violation Of A Person's Right Of Privacy"

Hanover laments that it has no duty to defend the ZIP Code Complaints because they do not allege a violation of a person's right of privacy, but this argument fails as a matter of law. (*See* Hanover Motion at 13, 18, 19.)

Courts generally view the right of privacy as encompassing two distinct legal rights: the right to seclusion and the right to secrecy.  *See, e.g.*, *Md. Cas. Co. v. Express Prods.*, No. 09 C 857, 2011 U.S. Dist. LEXIS 108048, *53 (E.D. Pa. Sept. 22, 2011); *Telecomms. Network Design & Paradise Distrib. v. Brethren Mut. Ins. Co.*, 5 A.3d 331, 337 (Pa. Super. Ct. 2010).

Pennsylvania courts specifically recognize the right to secrecy as the right protected under the "personal and advertising injury" clause of CGL policies, similar to those at issue here. *See, e.g., Express Prods.*, 2011 U.S. Dist. LEXIS 108048, at *53. The focus of the "right to secrecy" is "on the content of the message itself," whereas the "right to seclusion" is the "right to be left alone." *Brethren Mut. Ins. Co.*, 5 A.3d at 337. Specifically, a violation of the right to secrecy "occurs when someone's *private, personal* information is disclosed to a third person." 9A Couch on Ins. § 129:8 (3d ed. 2013) (emphasis added); *see also ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 148-49 (Cal. App. 2d Dist. 2007).

Hanover inaccurately asserts that it has no duty to defend because "[t]here is no allegation that Urban Outfitters or Anthropologie published private facts." (Hanover MSJ at 11-13.) This argument is facially incorrect. First, each of the ZIP Code Complaints plainly alleges that ZIP codes constitute the Underlying Plaintiffs' *private* information and, as Hanover itself admits, its duty to defend is determined solely by the allegations of the underlying complaints. (*See* Hanover Motion at 9.) Second, the standard for triggering an insurer's duty to defend is not only the disclosure of "secret" information, but also that of "*personal*" or "*private*" information, which is also alleged in the ZIP Code Complaints. *See, e.g., Motorists Mut. Ins. Co. v. Dandy-Jim, Inc.*, 182 Ohio App. 3d 311, 317 (Ohio Ct. App., Cuyahoga County 2009) (emphasis added) ("A person claiming the privacy right of secrecy asserts the right to prevent disclosure of *personal information* to others."); 9A COUCH ON INS. § 129:8 (3d ed. 2013) (right to secrecy involves the disclosure of "someone's *private, personal* information") (emphasis added); *Recall Total Info. Mgmt. v. Fed. Ins. Co.*, 2012 Conn. Super. LEXIS 227, 20 n. 16 (Conn. Super. Ct. Jan. 17, 2012) (same); PASTOR, SHERILYN, 3-19 APPLEMAN ON INSURANCE § 19.04 (Matthew Bender & Co. 2013); *Brethren,* 5 A.3d at 337.

10

Furthermore, Hanover incorrectly alleges that "it is clear that the Hanover's Policies' reference to 'right of privacy' envisions the tort of publicity to private life." (Hanover MSJ at 15.) Not only does Hanover fail to cite an insurance coverage case that supports this conclusion, but, in fact, other courts have expressly rejected such a proposition. *See Park Univ. Enters. v. Am. Cas. Co. of Reading*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 2004) (noting that if insurer wanted the term "right of privacy" to be defined by importing Illinois tort standards, "it should have indicated as much in the policy").

Notably, the cases Hanover relies on are neither in the insurance nor ZIP code context and do not hold that: (a) the alleged content of the publication must be "secret" to trigger an insurer's duty to defend; or (b) that the "tort of publicity to private life" is the standard governing an insurer's duty to defend. *See Brignola v. Home Props., L.P.*, 2013 U.S. Dist. LEXIS 60282 (E.D. Pa. Apr. 25, 2013); *Holder v. City of Allentown*, 151 F.R.D. 552 (E.D. Pa. 1993); *Burger v. Blair Medical Assocs., Inc.*, 964 A.2d 374 (Pa. 2009). Because the ZIP Code Complaints allege the disclosure of a person's *private* or *personal* information, as set forth below, Hanover has a duty to defend. Additionally, the TCPA case relied on by Hanover is distinguishable from the case at bar because the ZIP Code Actions concern the Underlying Plaintiffs' personal and private information, as seen with the ZIP Code Complaint allegations below, rather than just their right to be left alone. (*See* Hanover MSJ at 19 (citing *Brethren*, 5 A.3d at 337).)

### 1. The *Hancock* Complaint Alleges A Violation Of A Person's Right Of Privacy (Secrecy)

Hanover's duty to defend the *Hancock* Complaint is determined solely by looking to the allegations in the underlying complaint, which plainly allege an invasion of the plaintiffs' right to secrecy. *See Post v. St. Paul Trav. Ins. Co.*, 691 F.3d 500, 517 (E.D. Pa. 2012).

11

The *Hancock* Complaint alleges that it "seeks damages for [the] unlawful act" of "obtaining consumers' *private* identification information." (Jt. App. at JA004 (Hancock Compl. at ¶ 1) (emphasis added); *see also id.* at JA006 (Hancock Compl. at ¶ 14) (alleging that the statute was enacted because of "credit card sales policies that *invade consumer privacy* and expose consumers to potential credit fraud") (emphasis added); *id.* at JA0013 (Hancock Compl. at ¶ 53) (alleging that the *Hancock* plaintiffs are aggrieved because their "*privacy* has been unlawfully invaded.") (emphasis added).)    These allegations plainly demonstrate violations of the right to secrecy – the right to prevent the disclosure of "someone's private, personal information," as a matter of law. *See* 9A COUCH ON INS. § 129:8 (3d ed. 2013); *see also* PASTOR, SHERILYN, 3-19 APPLEMAN ON INSURANCE § 19.04 (Matthew Bender & Co. 2013); *Brethren,* 5 A.3d at 331; *Dandy-Jim, Inc.,* 182 Ohio App. 3d at 317; *Recall;* 2012 Conn. Super. LEXIS 227 at *20, n. 16.

### 2.    The *Miller* Complaint Alleges A Violation Of A Person's Right Of Privacy (Secrecy)

The *Miller* Complaint similarly alleges an invasion of the plaintiffs' right to secrecy. Although Hanover cites certain allegations from the *Miller* Complaint relating to the right to seclusion, it omits the numerous allegations relating to the right to secrecy – *i.e.* allegations relating to the *Miller* plaintiffs' "private, personal information" or the "content of [Urban Outfitters'] message." *See* 9A COUCH ON INS. § 129:8 (3d ed. 2013); PASTOR, SHERILYN, 3-19 APPLEMAN ON INSURANCE § 19.04 (Matthew Bender & Co. 2013); *Brethren,* 5 A.3d at 337.

For example, the *Miller* Complaint alleges that the plaintiffs' "damages as a result of [Urban Outfitters' allegedly] unlawful conduct include the invasion or breach of their privacy from the collection of their *personal identification information.*" (Jt. App. at JA0022 (Miller Compl. at ¶ 19) (emphasis added); *see also id.* (Miller Compl. at ¶ 18) (alleging that Urban

Outfitters' misappropriated the plaintiffs' "ZIP codes and other *personal identification information* for use in its marketing and promotional efforts"); *id.* at JA0027 (Miller Compl. at ¶ 39) (alleging that the *Miller* plaintiffs "were also injured as a result of Defendant's misappropriation of their commercially valuable *personal identification information* (including their ZIP codes and other information obtained by using the ZIP codes) for profit or other economic benefit.").)  It is hard to imagine how these allegations "do[] not complain about the content of the unwanted marketing materials," as Hanover alleges.  (Hanover's MSJ at 19.)

Therefore, Hanover has a duty to defend Urban Outfitters in the *Miller* Action because the *Miller* Complaint alleges that Urban Outfitters violated the plaintiffs' right to secrecy.

> **3.    The *Dremak* Complaint Alleges A Violation Of A Person's Right Of Privacy (Secrecy)**

Hanover has a duty to defend Urban Outfitters in the *Dremak* Action because the *Dremak* Complaint alleges an invasion of the plaintiffs' right to secrecy.

As it did with the other two ZIP Code Complaints, Hanover wholly ignores the allegations relating to Urban Outfitters' alleged invasion of the plaintiffs' right to secrecy and focuses exclusively on allegations involving the right to seclusion.  (*See* Hanover's MSJ at 21.) For example, Hanover fails to address the *Dremak* plaintiffs' allegations that Urban Outfitters "negligently failed to take affirmative steps to alert plaintiffs and the Class of defendants' intent to use their ZIP codes to obtain their home addresses and other *private information*."  (Jt. App. at JA0040 (Dremak Compl. at ¶ 38); *see also id.* at JA0041 (Dremak Compl. at ¶ 45) (alleging that Urban Outfitters used the plaintiffs' ZIP codes to "obtain their *private* home addresses" and that this information was "stored and used by defendants" and "disseminated and shared with others"); *id.* at JA0041 (Dremak Compl. at ¶ 49) (referring to the plaintiffs' "right to control the dissemination of one's *private personal information*, including one's home address").)  These

allegations clearly assert an invasion of the right to secrecy, because the allegations relate to the *Dremak* plaintiffs' "private, personal information" or the "content of [Urban Outfitters'] message." *See* 9A Couch on Ins. § 129:8 (3d ed. 2013); *Brethren*, 5 A.3d at 331.

Since the *Dremak* Complaint alleges an invasion of the underlying plaintiffs' right to secrecy, Hanover has a duty to defend Urban Outfitters in the *Dremak* Action.

**D.      All Of The ZIP Code Complaints Allege "Damages"**

Hanover does not dispute that the *Miller* Complaint alleges damages.  However, Hanover asserts that the *Hancock* Complaint's allegation of statutory damages cannot constitute "damages" and that the *Dremak* Complaint's claim of disgorgement, similarly, does not allege "damages."  This argument is without merit, as Pennsylvania courts have recognized coverage for the types of damages sought by these Complaints.

**1.      The *Hancock* Complaint Alleges "Damages"**

Hanover argues that the statutory damages alleged in the *Hancock* Complaint cannot constitute "damages," but this argument fails as a matter of law. The Eastern District of Pennsylvania, interpreting Pennsylvania law, has held that statutory damages can constitute covered "damages." *See, e.g., Melrose Hotel*, 432 F. Supp. 2d at 488.  Like the policy in *Melrose Hotel*, the Hanover Policies say "nothing about covering only those damages that represent actual harm, as opposed to statutory damages." *Id* at 509.  Thus, the *Melrose Hotel* court recognized that had an insurer, such as Hanover, wanted to exclude statutory damages from its coverage, it could have done so in the language of the policy. *See id.*  However, Hanover failed to do so.

Hanover asserts that the statutes at issue in *Hancock* "permit recovery, even in the absence of actual injury."[4]  (*See* Hanover MSJ at 17.)  This argument is not supported by any legal authority, and, more dispositively, it wholly lacks merit.  In truth, D.C. Code § 47-3154(a), *on its face*, makes clear that the damages compensate the plaintiffs for their *actual* injury.  *See* D.C. Code § 47-3154(a) ("[a]ny person *aggrieved* by a violation . . . shall be entitled to institute an action to recover *actual damages* or $500, whichever is greater.") (emphasis added).  The fact that a statute allows for a recovery of actual loss or a specific statutory amount does not make the statute non-compensatory under Pennsylvania law.  *See, e.g., Melrose Hotel*, 432 F. Supp. 2d at 488 (recognizing that statutory damages related to the TCPA, which allow a party to "recover the greater of the actual monetary loss suffered or $500," were compensatory).  Therefore, the statutory damages indisputably constitute "damages," triggering Hanover's duty to defend.

*Whole Enchilada* is likewise inapposite because the court held that statutory damages related to FACTA were "akin to punitive damages," since the purpose of the statutory damages was "not to compensate the claimants for any actual monetary or physical loss."  *Whole Enchilada*, 581 F. Supp. at 704.  Conversely, the statute at issue in *Hancock* allows plaintiffs to recover "actual damages," so it is not simply punitive, and, thus, it is more like the TCPA statutory damages, which constitute "damages," which contained a compensatory purpose.  *See Melrose Hotel*, 432 F. Supp. 2d at 488; D.C. Code § 47-3154(a).

Hanover also incorrectly posits that "the *Hancock* complaint does not allege that the plaintiffs or class members suffered a compensable injury, nor does it seek actual damages."  (*See* Hanover MSJ at 16.)  *Whole Enchilada*, relied on by Hanover, is not applicable because the relevant complaint in *Whole Enchilada* "alleged only potential harm" involving a potential risk

---

[4]      Hanover cites to no authority to support its statements that the statute at issue "is clearly not intended to compensate" the class members or for the proposition that the statute "is meant to punish Defendants for their conduct." (*See* Hanover MSJ at 17.)

of identity fraud, whereas the *Hancock* plaintiffs allege they were *actually* aggrieved.  *See Whole Enchilada*, 581 F. Supp. at 704; (*see also* Jt. App. at JA0013 (Hancock Compl. at ¶ 53)) ("The Class members are *aggrieved* by the Defendants when they ask for customer's [sic] ZIP code when payment is made by credit card. They are further *aggrieved* because the Defendants' illegal storage of this Consumer Identification Information puts the Class members at risk of identity fraud.  They are further *aggrieved* by Defendants' actions because the Class members' privacy has been unlawfully invaded.") (emphasis added).)

### 2.    The *Dremak* Complaint Alleges "Damages"

Hanover argues that the *Dremak* Complaint, which seeks disgorgement, does not allege "damages," but this argument fails, as the *Dremak* Complaint alleges (1) damages related to negligence and (2) disgorgement.  (*See* Jt. App. at JA0042, 0044 (Dremak Compl. at ¶ 54, Prayer for Relief).)  Either type of damages, on its own, triggers Hanover's duty to defend.

First, the *Dremak* Complaint requests compensatory damages in connection with the *Dremak* plaintiffs' common law negligence claim based on Urban Outfitters' alleged breach of its "duty of care by storing and sharing plaintiffs' and the Class' personal identification information." (*See id.* at JA0040 (Dremak Compl. at ¶ 36).)  Specifically, the *Dremak* plaintiffs request damages "in an amount to be proven at trial." (*See id.* at JA0041 (Dremak Compl. at ¶ 46).)  This claim for damages based on the common law tort of negligence is regarded as independent from other claims involving the same underlying conduct. *See, e.g., Britamco Underwriters*, 431 Pa. Super. at 282 (treating a negligence allegation as separate from a claim of intentional misconduct).  Under Pennsylvania law, compensatory damages related to negligence are covered "damages," even when other non-covered damages are alleged regarding the same underlying conduct. *See, e.g., Merchs. & Bus. Men's Mut. Ins. Co. v. Juvenile Rehab. Servs.*,

No. 460 C 2004, 2005 Pa. Dist. & Cnty. Dec. LEXIS 99, *15 (Pa. Ct. Comm. Pl. Aug. 25, 2005) (even where punitive damage claims for the same underlying conduct were not covered, the court held that "the claims for compensatory damages resulting from the alleged negligence . . . are covered by the . . . commercial liability insurance policy"). Thus, the *Dremak* Complaint alleges covered "damages," which is sufficient on its own to trigger Hanover's duty to defend.

Moreover, the *Dremak* Complaint's claim for disgorgement also constitutes "damages" under Hanover's Policies. (*See* Jt. App. at 0044 (Dremak Compl. at Prayer for Relief.) Pennsylvania law allows "advertising injury damages" to include the disgorgement of profits.[5] *See, e.g., Int'l Commun. Materials v. Employer's Ins.*, No. 94-1789, 1996 U.S. Dist. LEXIS 21825, *19 (W.D. Pa. May 29, 1996) (holding that a party's "claim for [the disgorgement of] profits include[s] compensation for its loss, and thus constitutes covered 'damages' under the policies"). In *International Communication*, the court associated the disgorgement of profits with being compensatory, so it allowed disgorgement to constitute "damages". *See id.* (citations omitted) (stating that "an accounting of profits was traditionally regarded as another way of measuring the plaintiff's loss" and that "the most common application of [the disgorgement of profits] is compensation for injury when the damage remedy at law is inadequate").

Furthermore, Hanover's assertion that the *Dremak* Complaint does not allege "actual" injuries is equally unavailing. (Hanover MSJ at 22.) Although Hanover cites a single allegation relating to the risk of identity fraud, it omits reference to the numerous allegations relating to other actual injuries alleged by the *Dremak* plaintiffs. (*See, e.g.* Jt. App. at JA0041 (Dremak

---

[5]     The law of Pennsylvania on this topic is consistent with that of other jurisdictions. *See, e.g., Limelight Prods., Inc. v. Limelite Studios*, 60 F.3d 767, 769 (11th Cir. 1995) ("[T]his Circuit recognizes ill-gotten profits as merely another form of damages that the statute permits."); *Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 149 (4th Cir. 1987) ("The defendants' [ill-gotten] profits, however, are a rough measure of the plaintiff's damages. Indeed, they are probably the best possible measure of damages available."); *JP Morgan Sec., Inc. v. Vigilant Ins.*, 21 N.Y.3d 324 (N.Y. 2013).

Compl. at ¶ 46) ("Plaintiffs and the Class have been damaged by defendants' negligent conduct . . . Damages include the defendants' misappropriation of personal identification information owned by plaintiffs and the Class and taking money that should have been paid to plaintiffs and the Class for it."); *id.* at JA0042 (Dremak Compl. at ¶ 53) ("Defendants' actions constitute a 'serious invasion of privacy' in that plaintiffs and the Class have had their private home addresses accessed, shared, and/or sold to others without their knowledge or consent."); *id.* at JA0043 (Dremak Compl. at ¶ 59) ("plaintiffs' and the Class' personal identification information was used by defendants for their own profit, and to the detriment of plaintiffs and the Class").)

Hanover cites to *Central Dauphin School District v. American Casualty Company* in support of the proposition that disgorgement does not constitute "damages," but this argument must fail. *See Cen. Dauphin Sch. Dist. v. Am. Cas. Co.*, 493 Pa. 254 (Pa. 1981); (Hanover MSJ at 23.) First, this particular argument was expressly rejected by the *International Communication* court. *See Int'l Commun. Materials*, 1996 U.S. Dist. LEXIS 21825, at *17 ("We disagree" with the argument that "an accounting of profits does not constitute 'damages' under the insurance contracts, and that a construction of the contract to provide coverage for profits would be contrary to public policy."). Second, *Central Dauphin*'s holding is not as broad as Hanover asks the Court to believe. *See Central Dauphin*, 493 Pa. at 254. Rather, it narrowly held that there was no loss "[b]ecause [Pennsylvania's] public policy does not permit a school district to make unlawful taxation just as revenue-productive as lawful taxation, it must be concluded that a political subdivision's return of tax monies to its taxpayers collected by an unlawful tax is uninsurable." *See id.* at 260. On a similar note, the *USX Corporation v. Adriatic Insurance Company* case is distinguishable because the disgorgement was non-compensatory and in the context of a violation of an anti-trust law, which likely involves significant public

18

policy concerns. *See USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d 593, 620, n. 19 (W.D. Pa.

2000) (emphasis added); (*see also* Hanover MSJ at 23.)

Therefore, the *Dremak* Complaint alleges "damages" within the meaning of the Hanover

Policies.

**E.    None Of The Exclusions In The Hanover Policies Apply To Excuse
       Hanover's Duty To Defend**

Hanover asserts that the Distribution of Material and the Prior Publication exclusions

apply to bar its duty to defend, but these arguments fail as a matter of law. (*See* Hanover MSJ at

10-11.)  Under Pennsylvania law, an insurer's reliance on an exclusion is an affirmative defense,

so the insurer bears the burden of proving that the exclusion applies. *Melrose Hotel*, 432 F.

Supp. 2d at 511.  Moreover, "[i]n Pennsylvania, exclusionary clauses are considered ambiguous

as a matter of law and must be construed against the insurer." *Id.* (citation omitted).[6]  For the

reasons set forth below, and in construing the exclusions against Hanover, Hanover fails to meet

its burden in establishing that the exclusions allow it to avoid its duty to defend.

**1.    The Distribution Of Material Exclusion Does Not Apply To Bar
       Hanover's Duty To Defend The ZIP Code Actions**

Hanover asserts that the Distribution of Material exclusion applies to preclude Hanover's

duty to defend, but this argument fails because each ZIP Code Complaint alleges a common law

claim that is independent of any statutory violation.  Alternatively, even if the common law

claims were not present, Hanover would still have a duty to defend the *Hancock* and *Miller*

Complaints, as one of the Hanover Policies contains a narrower Distribution of Material

exclusion that does not involve a statute that prohibits or limits the "collecting" or "recording" or

material or information.

_____

[6]      In its Motion, Urban Outfitters inadvertently cited the wrong case for this quotation.  However,
the case cited above includes this quoted language.

a) **The Distribution Of Material Exclusion Found In Hanover's Earlier Policies Does Not Apply Because Each Complaint Alleges A Common Law Claim**

Hanover alleges that coverage is barred by the Distribution of Material exclusion, but it fails to meet its burden of proof on this issue. *See Melrose Hotel*, 432 F. Supp. 2d at 511; (*see also* Hanover MSJ at 25.) In this case, the Distribution of Material exclusion does not apply, as a matter of law, to preclude Hanover's duty to defend because each of the ZIP Code Complaints contains otherwise covered common law allegations, separate from the statutory violation claims. (*See* Jt. App. at JA0032-33, 0039-42 (Dremak Compl. at ¶¶ 3, 34-54) (alleging negligent conduct); *id.* at JA0015 (Hancock Compl. at ¶ 67) (alleging reckless conduct)[7]; *id.* at JA0028 (Miller Compl. at ¶¶ 43-47) (alleging unjust enrichment).)

Courts have held that when a claim is potentially excluded by the Distribution of Material (or similar) exclusion, the insurer still has a duty to defend the insured if the complaint also contains common law claims that are not otherwise excluded under the policy. *See, e.g., Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC*, No. 4:13-cv-7 CAS, 2013 U.S. Dist. LEXIS 135497, *24 (E.D. Mo. Sept. 23, 2013) (holding that the insurers "have not established that there is no potential for coverage for the underlying [common law] conversion claim based on the Violation of Statutes exclusion," involving the TCPA); *Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 2d 1005, 1015 (N.D. Ill. 2012) (stating that while the Distribution of Material exclusion "would exclude coverage if the [statutory violations] had been [the] only claims, it does not exclude coverage of the [common law] defamation claim which is not a statutory claim.").

---

[7]     The Eastern District of Pennsylvania, interpreting Pennsylvania law, has recognized that a claim for reckless conduct is a valid common law claim. *See, e.g., Ellis v. Mohenis Servs.*, No. 96-6307, 1997 U.S. Dist. LEXIS 8934, *15 (E.D. Pa. June 18, 1997).

20

If Hanover had intended to exclude coverage for common law claims related to the statutory claims under its Distribution of Material exclusion, it could have used commercially-available policy language: "This insurance does not apply to . . . [bodily injury, property damage, or personal and advertising injury] arising directly or indirectly out of any action or omission that violates or is alleged to violate (1) [the TCPA] . . . or (3) any . . . statute, ordinance or regulation . . . **or any other legal liability, at common law or otherwise** that addresses, prohibits or limits the printing . . . of material or information." *See* Zurich Endorsement No. U-GL-1517-A CW at pp. 8-9, 26-27 (emphasis added), *available at* https://ociaccess.oci.wi.gov/Companyfilings/document?docid=179587&filid=193412. However, Hanover failed to include this language. (*See, e.g.*, Jt. App. at JA0191 (2010-2011 Policy).)

The cases Hanover cites in support of its argument do nothing to alter the conclusion that Hanover's duty to defend is not barred by the Distribution of Material exclusion.  Initially, Hanover cites to the *Big 5* case, but it is not applicable, as the case was decided under California law, under which common law causes of action in this context are not viewed as independent.[8] *See Big 5*, 2013 U.S. Dist. LEXIS 100757; (*see also* Hanover MSJ at 27.)  Conversely, Pennsylvania case law holds that the underlying common law claims are separate from other claims related to the same underlying conduct.  *See, e.g., Britamco*, 431 Pa. Super. at 282 (treating a negligence allegation as separate from a claim of intentional misconduct for purposes of determining insurer's duty to defend in light of intentional acts exclusion).

The other cases Hanover relies on are also distinguishable because they involve different exclusions and entirely different sets of facts.  Two of the cases Hanover cites are unpublished

---

[8]     The *Big 5* case is also currently on appeal to the Ninth Circuit.  *See Big 5 Sporting Goods Corp. v. Zurich American Ins. Co.*, Case No. 13-56249 (9th Cir. 2013).

and labeled "not regarded as precedential." *See Alea London Ltd. v. Woodlake Mgmt.*, 365 Fed.

Appx. 427 (3d Cir. 2010); *Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 Fed. Appx. 233 (3d

Cir. 2012). In addition to being non-precedential, the *Mericle* case is additionally distinguished

because it was in the context of criminal conduct. *See Mericle*, 486 Fed. Appx. at 233.

Furthermore, courts have held, in published decisions, that common law claims trigger

the duty to defend even when Distribution of Material (or similar) exclusions contain "arising out

of" language. *See, e.g., Harris Med. Assocs., LLC*, 2013 U.S. Dist. LEXIS 135497, at *24

(holding that the insurers "have not established that there is no potential for coverage for the

underlying [common law] conversion claim based on the Violation of Statutes exclusion," which

included "arising out of" language); *Axiom Ins. Managers, LLC*, 876 F. Supp. 2d at 1015 (stating

that while the Distribution of Material exclusion, containing "arising out of" language, "would

exclude coverage if the [statutory violations] had been [the] only claims, it does not exclude

coverage of the [common law] defamation claim which is not a statutory claim."). Thus,

Hanover must defend Urban Outfitters in each of the ZIP Code Actions in their entirety.

Pennsylvania courts hold that when one count is covered under a policy, the insurer must

defend the entire suit. *See Bracciale v. Nationwide Mut. Fire Ins., Co.*, No. 92-7190, 1993 U.S.

Dist. LEXIS 11606, *21 (E.D. Pa. Aug. 20, 1993). In this case, because the common law claims

are covered, Hanover has a duty to defend all of the ZIP Code Actions. *See id.*

> **b)** **The Distribution Of Material Exclusion Found In Hanover's**
> **2011-2012 Umbrella Policy Is Inapplicable**

Even assuming, *arguendo*, that the ZIP Code Complaints did not allege common law

claims, Hanover would still have a duty to defend the *Hancock* and *Miller* actions under its

2011-2012 umbrella policy, which contains a narrower version of the Distribution of Material

exclusion. The Hanover 2011-2012 umbrella policy contains a Distribution of Material

exclusion that excludes claims arising out of:

> any action or omission that violates or is alleged to violate [a]ny statute, ordinance or regulation. . . that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

(Jt. App. at JA0321 (2011-2012 Umbrella Policy).) Thus, the version of the Distribution of

Material exclusion in Hanover's 2011-2012 umbrella policy does not exclude claims based on

alleged violations of statutes that prohibit or limit the "*recording*" or "*collecting*" of material or

information. (*See id.*) (emphasis added).

The 2011-2012 Hanover umbrella policy exclusion stands in stark contrast to the

Distribution of Material exclusions found in other policies issued by Hanover to Urban

Outfitters. (*See, e.g.*, Jt. App. at JA0133 (2009-2010 Policy).) Other such CGL policies,

including policies prior to the 2011-2012 Hanover umbrella policy, excluded the following

claims arising out of:

> any action or omission that violates or is alleged to violate [a]ny federal, state, or local statute, ordinance or regulation...that **addresses**, prohibits, or limits **the printing**, **dissemination**, **disposal**, **collecting**, **recording**, sending, transmitting, communicating or distribution of material or information.[9]

(*See id.*) (emphasis added). Thus, in the 2011-2012 policy, Hanover affirmatively *dropped* from

the exclusion claims for violations of statutes prohibiting or limiting the "collecting" and

"recording" of information. This affirmative removal clearly indicates that the policies no longer

excluded statutory claims brought for the "collecting" or "recording" of information. This is

especially true in light of the well accepted rule that a "court must give effect to every word that

can be given effect." *Wzontek v. Zurich Ins. Co.*, 418 Pa. 30, 34 (Pa. 1965). If Hanover intended

---

[9]    The actions in bold are not present in the 2011-2012 Hanover umbrella insurance policy.

to exclude the type of statutory claims alleged in the ZIP Code Actions, it certainly could have done so, as it had in the prior policies.

In attempting to deny the effect of the affirmative omission of "recording" and "collecting," Hanover argues that "communicating" should be given an incredibly broad interpretation, but as stated above, under Pennsylvania law, a court must give effect to every word in an insurance policy. *Wzontek*, 418 Pa. at 34. Thus, it would be nonsensical for the Distribution of Material exclusion to include "recording" and "collecting," if "communicating" covered both of those actions. Therefore, giving every word effect, "recording" and "collecting" have a different meaning than "communicating" under Pennsylvania law. *See id.*

With this background in mind, the statutes alleged to have been violated by Urban Outfitters in the *Hancock* and *Miller* Complaints are not the type of statutes that are excluded by the Hanover 2011-2012 umbrella insurance policy, as the statutes do not involve the conduct excluded under the 2011-2012 umbrella policy. (*See* Jt. App. at JA0004 (Hancock Compl. at ¶ 3); *id.* at JA0020 (Miller Compl. at ¶ 20) (both statutes dealing with the collection and recording of ZIP codes and other personal information).) Indeed, it is difficult to imagine how Hanover could argue otherwise given its affirmative removal of the terms "recording" and "collecting" from the prior version of the exclusion. Therefore, the Distribution of Material exclusion would not apply, as a matter of law, to the *Hancock* and *Miller* Complaints, even in the absence of common law claims.

### 2. The Prior Publication Exclusion Does Not Apply To Bar Hanover's Duty To Defend The ZIP Code Actions

Hanover argues that the Prior Publication exclusion applies to bar its duty to defend, but this argument fails as a matter of law, as the publication of each ZIP Code constituted a "new" publication. As Hanover admits in its Motion, the Prior Publication exclusion does not apply

24

when "later publications contained 'new matter' – *i.e.* substantively different content – that the underlying complaint alleged were fresh wrongs." *Urban Outfitters*, 2013 U.S. Dist. LEXIS 116889 at *17; (*see also* Hanover MSJ at 28.).   Similarly, the Prior Publication exclusion does not apply to bar coverage when the material published after the policy's inception is "similar to previously published material, or if part of an 'advertising campaign.'" *Int'l Commun. Materials*, 1996 U.S. Dist. LEXIS 21825, at *13.

The cases cited by Hanover do not support the application of the Prior Publication exclusion to the case at hand because each of the cases is distinguishable in one important respect: they involve a single plaintiff who was injured by publication of the same material that occurred both prior to and after the inception of the insured's policy. *See Hanover Ins. Co. v. Urban Outfitters*, 2013 U.S. Dist. LEXIS 116889, *17 (E.D. Pa. Aug. 19, 2013); *Transp. Ins. Co. v. Pa. Manufacturers' Ass'n Ins. Co.*, 346 Fed. Appx. 862 (3d Cir. 2009)   For example, in a separate case between Urban Outfitters and Hanover, the "advertising injury [was] identical" and the alleged violation "infringe[d] upon the same trademarked word and thus cause[d] advertising injuries to the [the sole underlying plaintiff] in the same way." *See Urban Outfitters*, 2013 U.S. Dist. LEXIS 116889, at *17.

The current coverage dispute between Urban Outfitters and Hanover differs in two important and dispositive respects: (a) this case involves numerous underlying plaintiffs who each had a *different ZIP code* that was personal to each individual plaintiff (*i.e.* "*new material*"); and (b) each individual plaintiff allegedly suffered a separate and distinct injury (*i.e.* "fresh wrongs").  The distinction between the cases Hanover relies on and the case at hand is highlighted by a recent federal case interpreting both the *Transportation Insurance Company v. Pennsylvania Manufacturers' Association* case and the *Taco Bell v. Continental Casualty*

*Company* case cited by Hanover. *See Encore*, 2013 U.S. Dist. LEXIS 93513, at *33, *34, n. 20

(citing *Transp. Ins. Co. v. Pa. Manufacturers' Ass'n Ins. Co.*, 346 Fed. Appx. 862 (3d Cir. 2009);

*Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004); (*see also* Hanover MSJ at

28.)  In *Encore*, the district court for the Southern District of Ohio held that the Prior Publication

exclusion did not apply to an underlying lawsuit where the insured allegedly recorded callers'

information in violation of the Federal Credit Reporting Act. *Encore*, 2013 U.S. Dist. LEXIS

93513, at *33.  Specifically, the *Encore* court held that "*each individual telephone call*

constituted *new material* – the caller's individual confidential information – published for the

first time when it was recorded during the call." *Id.* (emphasis added).  The court reasoned that

"the fact that Sally Smith's confidential information was published when recorded during a call

made in 2006 is thus wholly irrelevant to the question of when John Doe's confidential

information was first published by recording his call, because the two calls do not constitute

publication of the same material." *See id.* at *34.  The court held that where "the underlying

complaints would allow proof of publication of new material during the policy period, the

insurer may not avoid its duty to defend simply because the publications were part of a

'continuing course of conduct.'" *Id.* at *37.

Therefore, in this case, each of the ZIP Code Complaints alleges publication of "new

material" after the inception of Hanover's Policies.  (*See* Urban Outfitters MSJ at 28.)  Each time

a separate plaintiffs' ZIP code was allegedly recorded, sold, and/or used to send marketing

materials, a "fresh wrong" occurred, precluding the application of the Prior Publication

exclusion. *See Urban Outfitters*, 2013 U.S. Dist. LEXIS 116889, at *17.

At most, the publication of each ZIP code after the inception of the policy might be

*similar* to the material published prior to the policy.  Of course, "if [Hanover] had intended that

the exclusion apply to advertising campaigns or material that is 'similar to' material published before the inception of the policies, it could have provided such language." *See Int'l Commun.*, 1996 U.S. Dist. LEXIS 21825, at *13 (citing a more restrictive version of the exclusion that excluded claims where "the first injurious publication or utterance of the same or similar material was made prior to the effective date of this insurance").

Thus, the Prior Publication exclusion does not allow Hanover to avoid its duty to defend as a matter of law.

> **F.**     **Hanover Owes Urban Outfitters A Duty To Defend If Any Of The ZIP Code Complaints Could Reasonably Be Amended To State A Claim Covered Under The Policy**

Urban Outfitters is entitled to a defense if any of the ZIP Code Complaints could reasonably be amended to state a claim covered by the Hanover Policies. Pennsylvania law requires an insurer to provide a defense if the complaint "could reasonably be amended to state a claim under the policy." *See, e.g., Britamco Underwriters*, 855 F. Supp. at 798. Here, distilled, each of the ZIP Code Complaints alleges violations of the same type of allegedly wrongful conduct – invasion of the right to privacy. Therefore, to the extent one of the ZIP Code Complaints contains allegations that are sufficient to trigger Hanover's duty to defend, but similar allegations are missing from one of the other ZIP Code Complaints, the Court should view each of the Complaints as containing that allegation, since each of the Complaints could reasonably be amended to state that claim. *See id.*

## III.    **CONCLUSION**

For the reasons set forth above, and the reasons set forth in more detail in Urban Outfitters' Motion, Hanover's Motion should be denied and Urban Outfitters' Motion should be granted.

Dated: February 7, 2014

Respectfully submitted,

PROSKAUER ROSE LLP

___/s/ Paul L. Langer_____

Paul L. Langer (admitted *pro hac vice*)
Steven R. Gilford (admitted *pro hac vice*)
Bradley J. Lorden (admitted *pro hac vice*)
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
t. 312.962.3550
f. 312.962.3551
planger@proskauer.com
sgilford@proskauer.com
blorden@proskauer.com

Samuel W. Cortes
FOX ROTHSCHILD LLP
Attorney ID No. 91494
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA  19341-0673
(610) 458-7500

*Attorneys for Defendants,*
*Urban Outfitters, Inc., and*
*Anthropologie, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ONEBEACON AMERICA INSURANCE      :
COMPANY,      :
     :
        Plaintiff/Counter-Defendant,      :
     :
      v.      :
     :
URBAN OUTFITTERS, INC., and      :   Case Number 2:13-cv-05269-SD
ANTHROPOLOGIE, INC.      :
     :   Judge Stewart R. Dalzell
        Defendants/Counter-Plaintiffs/      :
        Third Party-Plaintiffs,      :
     :
      v.      :
     :
THE HANOVER INSURANCE GROUP,      :
     :
        Third Party-Defendant.      :

## <u>CERTIFICATE OF SERVICE</u>

I, Ashley L. Lerch, Esquire, hereby certify that a true and correct copy of Urban Outfitters, Inc. and Anthropologie, Inc.'s Brief in Response To Hanover's Motion for Summary Judgment was served this 7th day of February, 2014, by electronic means through the Court's transmission facilities on the following counsel of record:

Michael O. Kassak, Esquire
Joshua A. Mooney, Esquire
White and Williams LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA  19103
*Attorneys for OneBeacon America Insurance Company*

Andrew J. Gallogly, Esquire
Margolis Edelstein
The Curtis Center, 4th Floor
170 South Independence Mall
Philadelphia, PA  19106-3337
*Attorneys for The Hanover Insurance Company*

Mark W. Shaughnessy, Esquire
Boyle, Shaughnessy & Campo, P.C.
695 Atlantic Avenue
Boston, MA  02111
*Attorneys for The Hanover Insurance Company*

  /s/ Ashley L. Lerch
Ashley L. Lerch, Esquire